Ralph Nappi, Esq. Counsel Community Development Agency Roslyn Heights
You have asked whether the Town of North Hempstead may accept parcels of real property improved with one- to four-family unoccupied residences to which the Secretary of Housing and Urban Development holds title. If accepted, the Town would convey the property to an individual or a family in consideration of an agreement to rehabilitate the residence in accordance with the Urban Homesteading Law (section 810 of the Housing and Community Development Act of 1974 [Public Law 93-383]). No State or local funds would be used in carrying out this urban homesteading program.
The Executive Director of your Agency has advised us that the Town has designated the Agency to administer the program on behalf of the Town and that such a designation has the approval of the Department of Housing and Urban Development (HUD). As we understand it, all legal action involved in the program will be undertaken by the Town and in the name of the Town; the Agency will use its expertise developed out of urban renewal work to find suitable homesteaders, to monitor rehabilitation work, and to make such other recommendations to the Town as are appropriate for the Town's successful carrying out of the homesteading program. We also understand that the Agency's operation is financed wholly with Community Development Block Grant funds and that HUD regulations permit the Agency to act for the Town. You have pointed out, however, that none of the homes involved in homesteading are in an urban renewal area.
Your request thus raises two questions. One is whether there is statutory authority for the Town to participate in the homesteading program. The other is whether your Agency, established under Article XV-A of the General Municipal Law, is authorized to provide the services that the Town has requested you to provide.
That the Town of North Hempstead may participate in the homesteading program is clear. Section 99-h of the General Municipal Law is a comprehensive authorization to any municipal corporation — defined as a county, city, town, village, or school district — to accept and expend Federal funds for any purpose specified by the Federal Government so long as the purpose is not inconsistent with the Constitution or statutes of the State and relates to the general welfare of the municipality's inhabitants.
The preservation of housing stock clearly promotes the general welfare of a community. There does not appear to be any constitutional or statutory prohibition against a municipality serving as a conduit and local "administrator" for the Federal Government in carrying out its promotion of the general welfare through preservation of housing stock.
The only question, therefore, is whether section 99-h is to be construed strictly as an authorization to accept "funds" but not "property" to carry out a Federal program for the benefit of the inhabitants of a municipality. In light of the salutary purposes of the Federal programs that were the reason for the authorization granted by section 99-h, a narrow construction of the section would impute too narrow an intent to the Legislature. At the time of original passage of section 99-h — 1965 — Federal programs of this nature were grants of money. If the Legislature at that time had had an inkling that within a decade the Federal Government would also make "grants" of residential property, the Legislature would undoubtedly have anticipated the program by using the words "funds or property." In short, the intent of the Legislature was to facilitate local participation in Federal programs to promote the general welfare. A minor adventitious change in Federal policy ought not to frustrate the Legislature's effort to authorize participation in those programs. We conclude that section 99-h is adequate authorization for the Town to participate in the Federal urban homesteading program in the manner provided for by the Urban Homesteading Law.
Whether your Agency may provide the services outlined earlier is much less clear. Articles XV and XV-A were enacted to complement and to facilitate the carrying out of the Federal Slum Clearance and Urban Renewal Program (42 U.S.C. § 1451, et seq.). In 1974 Congress enacted the Housing and Community Development Act, PL 93-383, 42 U.S.C. § 5301,et seq. Section 5316 provided that no grants or loans could be made under the Urban Renewal Program after January 1, 1975. Federal funds for what was called "urban renewal" are now provided through Community Development Programs, Small Cities Programs, Urban Development Action Grants, the homesteading program, and others. It is natural for Article XV-A agencies that have acquired expertise in urban renewal would expect to continue their work under the new programs funded by the United States. To this end, some urban renewal agencies, including yours, have had their names changed to Community Development Agencies. (See, for example, Article XV-B, §§ 575-a, 589, 606, 620, 627, 654 [Huntington] and 654 [North Hempstead].)
These changes in name in no way affect the powers of such agencies as spelled out in Article XV-A. Naturally, your Agency and others have endeavored to keep up with the Federal changes in the method of financing the programs for which your Agency was created. The question, then, is whether the words of Article XV can be read broadly enough to permit limited accommodation to these Federal changes. If Article XV-A Urban Renewal Agencies are to operate under the powers granted by that Article, they must limit their work based on Federal grants and loans either to finishing up and closing out urban renewal programs that had Federal funds committed prior to January 1, 1975, or limit their use of Community Development Block Grant funds and other Federal funds provided through the 1974 Act to projects within an approved urban renewal area under an approved urban renewal plan. It appears doubtful that these agencies are so limiting their activities, particularly those that have changed their names. It also seems unlikely that the Legislature in approving name changes or in creating a new agency (ch 72, L 1980), assumed that these agencies are without any power to do community development work outside approved urban renewal areas.
Section 502 of Article XV defines "urban renewal" to include programs designed to effectuate urban renewal based on the Federal Slum Clearance and Urban Renewal Program "and all federal laws amendatory and supplementary thereto." Although these words clearly cover the Federal programs that have superseded urban renewal, the definition of "urban renewal" remains tied to "areas," which in turn are defined in the same section. Thus, the broad powers granted to a municipality under section 503 are powers that can be exercised only in a designated urban renewal area (§ 504). It follows that a municipality can use its Article XV powers to carry out these new Federal programs so long as the activity is within a designated urban renewal area. Likewise, a municipality can designate an Urban Renewal Agency as its agent for carrying out the activity (§ 502[2]). A municipality has no power under Article XV to designate an Urban Renewal Agency as its agent in carrying out Community Development programs outside a designated urban renewal area.
Nevertheless, you have raised the practical question whether your Agency, financed with Federal funds and authorized by HUD to act as a municipality's agent, may use your personnel to do the administrative work on the basis of which the Town of North Hempstead carries out these programs under the power granted to it by section 99-h. We think you can.
You are not proposing to enter either directly or as authorized agent for the Town into contractual or other legal relationships with third parties. Rather, you propose to use your expert personnel to do the paperwork on the basis of which the Town enters into those contractual relationships. Technically, it could be argued that your corporate powers do not allow you to do even this. But so long as HUD is satisfied, so long as you are not financed by local or State funds for the work, and so long as all final decisions are made and the formal action taken by the Town, we see no harm in this limited assistance to the Town in carrying out the purposes for which Articles XV and XV-A were originally enacted. In this connection, we note that section 520 calls for a liberal construction of Article XV. We do not construe the Act so liberally as to permit corporate action by your agency; we do construe the Article as permitting use of personnel to assist the Town in effectuating urban renewal under current Federal programs.
We conclude that your Agency may use your personnel to assist the Town in carrying out the urban homesteading program.